**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HEATHER TOTH,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | **No. 17-0429** |
| **BETHEL TOWNSHIP et al.,** | : | |
| **Defendants.** | : | |

**MCHUGH, J.**                                                                                    **MAY 24, 2017**

<u>**MEMORANDUM**</u>

This case involves a suburban township police officer who returned from maternity leave only to discover that she no longer had a job. Two years after becoming a Bethel Township police officer, Heather Toth became pregnant. After initially being denied her request for light duty, she took leave from work. Toth alleges that she did so based entirely on the assurance of her boss, Chief Tom Worrilow, that she would be allowed to come back once she gave birth and was ready. But in fact, when Toth asked to come back, her job was gone. Toth has sued Bethel, as well as Worrilow and several other Bethel officials in their individual capacities, stylizing her core claim as one of procedural due process: Toth asserts she had a protected interest in her job and was deprived of that interest without constitutionally required procedures. She also brings a breach of contract claim against Bethel. Defendants collectively now move to dismiss all claims except the due process claim against Bethel. For the following reasons, I will grant Defendants' motion, except as to the due process claim against Worrilow.

**I.      Background**

Toth had been a full-time Bethel police officer for two years when she became pregnant. Soon after, in October 2014, she told her boss, Worrilow, and submitted to Bethel's township supervisors a request for light duty accompanied by a doctor's note. Her request was denied;

1

instead, Toth was told (whether by a supervisor or Worrilow is unclear) that she should take leave because, as a pregnant woman, she was a "liability."  Taking leave would have the effect of making Toth eligible for unemployment benefits.  Much more important as to Toth's decision whether to take leave, however, was that Worrilow promised her that if she did, once she was ready to return her job would still be waiting for her.  Toth asked whether the board of supervisors, which oversees the police department and is ultimately charged with making police personnel decisions, would put that promise in writing.  While Worrilow said no, he purportedly assured her that "they would not do anything illegal."  Relying on his initial promise, Toth worked her last day that November, and shortly after filed for unemployment and started receiving benefits.

Every January, Bethel's board of supervisors meets to, among other things, appoint its police officers to one-year terms.[1]  Just prior to the 2015 meeting, Worrilow informed Toth (who was still on leave) that while the supervisors would not reappoint her this time around, it was merely a formality, and his promise—that she would still have her job once she was done with maternity leave—still stood.  When Toth offered to turn in her badge for the time being, Worrilow said that was unnecessary.  And so, as expected, when the board—Chairman Michael Davey, Vice Chairman Ed Miles, and Supervisors Jean Stoyer, John Camero, and Todd Apple—voted to appoint the upcoming year's police officers, Toth was not among those chosen.  She was not given any statement of reasons why.

That May, Toth gave birth.  In July, she spoke by phone with Detective Sergeant Ben Ash, who asked Toth if she would be able to return to work and parent at the same time.  Toth

---

[1] While this bit of background is not taken from the record here, Judge Savage, in a very similar case which the parties discuss at length, described Bethel's practice in this regard.  *See Jaglowicz v. Bethel Township*, 178 F. Supp. 3d 262, 265 (E.D. Pa. 2016).

replied that she intended to fully resume her job duties; she also told Ash that his question was "inappropriate." A few weeks later, Toth contacted Worrilow and said she was ready to return to work. Worrilow is alleged to have told her that, given changes to the police department's job-application process, Toth would need to undergo a psychiatric evaluation and a reference check. Toth did both. A few weeks later, however, after (for reasons seemingly not relevant here) Worrilow resigned as chief and Ash took his place as acting chief, Ash informed Toth that she would not be allowed to return. He did not give a reason.

Toth then reached out to Vice Chairman Miles about not being rehired, but to her surprise, Miles told her that he thought she had already quit. Toth explained to Miles her leave arrangement with Worrilow, pointing out that she still had her badge. In response, Miles only suggested she talk to the township lawyer. A week later, Toth cleaned out her locker at work and returned her township belongings, including her badge. She also asked for her employment file—but alleges that when she received it, her initial doctor's note and light-duty request, as well as the results of her psychiatric evaluation and reference checks, were missing. Indeed, her file contained no information about her pregnancy or her recent job application at all.

That October, Toth, now jobless, was told by Ash that he would resubmit her job application.[2] A month later, however, Toth again was informed that she would not get her job back. And then, in December, came the death knell: Ash resubmitted Toth's application one last time, and one last time, she was told, it was denied. Toth began looking for a new job soon after, applying for several months before finally taking a lower-paying, non-law-enforcement position.

Toth has sued Bethel, as well as Worrilow and each of the other above-named individuals (the Officials), under 42 U.S.C. § 1983 for violating her procedural due process rights by

---

[2] Long before this point, Mark Koehler had replaced Apple on the board of supervisors, and around this time, Miles resigned as vice chairman and was replaced by Alex Giribaldi.

removing her from her job without any sort of notice or a hearing.  She also brings a claim against Bethel for breach of contract.  Defendants now move to dismiss the claims against the Officials on the basis of qualified immunity, and the contract claim for failure to state a claim.

## II.    Standard of Review

On a motion to dismiss for failure to state a claim, my task is to determine whether, taking the plaintiff's factual allegations as true and disregarding her legal conclusions, she has stated a "plausible" claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Additionally, where a defendant-official moves to dismiss on the basis of qualified immunity, I must determine whether the plaintiff has "plead[ed] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  In doing this, I must draw all factual inferences in favor of the plaintiff.  *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013).  And because qualified immunity is an affirmative defense, the ultimate burden of proving it remains on the party claiming it.  *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014).

## III.    Discussion

I conclude that all of Toth's procedural due process claims will be dismissed except for the claim against Worrilow.  I will also dismiss her breach of contract claim.

### A.  Procedural Due Process Claims Against the Officials

The Officials[3] claim they are shielded from Toth's procedural due process claims by qualified immunity.  "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (citation omitted).

---

[3] The Officials, again, are:  the former chief, Worrilow; the current chief, Ash; and the current and former supervisors, Davey, Miles, Stoyer, Camero, Apple, Koehler, and Giribaldi.

A claim of qualified immunity thus raises two principal questions: first, whether the plaintiff has sufficiently alleged the violation of a constitutional right; and second, whether that right was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). While these questions can be taken up in any order, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), it may often be "difficult to decide whether a right is clearly established without deciding precisely what the existing constitutional right happens to be," *id.* (citation omitted). Because that is true in this case, I first address whether Toth has plausibly established a violation of her procedural due process rights, and then take up whether those rights were clearly established. Finally, because under § 1983 an individual is only liable for damages based on his or her own personal conduct, I address whether any of the specific conduct by the Officials here violated Toth's rights.

1. *Has Toth Sufficiently Alleged a Violation of Her Procedural Due Process Rights?*

The Fourteenth Amendment provides that no state shall "deprive any person of . . . property[] without due process of law." "This principle requires 'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in h[er] employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972)). While this pre-termination hearing need not be a full-dress evidentiary proceeding, it must include oral or written notice of the reasons for the employee's discharge, an explanation of the employer's evidence, and an opportunity for the employee to tell her side of the story. *Id.* at 545–46.

A procedural due process claim by a public employee requires proof of two elements: first, the employee must show a constitutionally protected property interest in her employment; and second, she must show that the procedures she was accorded by the government before it

deprived her of that interest were constitutionally insufficient. In this case, since Toth alleges she was never given any notice or hearing whatsoever, she has clearly met her latter burden. As to the threshold issue—whether Toth has established a property interest sufficient to trigger the Due Process Clause in the first place—I conclude that she has.

"To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 283 (3d Cir. 2005) (citing *Roth*, 408 U.S. at 577). Such an entitlement can be created by "ordinance, or by an implied contract." *Bishop v. Wood*, 426 U.S. 341, 344 (1976). It can even arise from an informal "mutually explicit understanding[]." *Perry v. Sindermann*, 408 U.S. 593, 599–601 (1972).

In all events, the question whether a public employee has a legitimate entitlement to continued employment is a question of state law. *Bishop*, 426 U.S. at 344. In Pennsylvania, "[a] governmental employee only has a personal or property right in his employment where he can establish a legitimate expectation of continued employment through either a contract or a statute." *Pipkin v. Pa. State Police*, 548 Pa. 1, 6, 693 A.2d 190, 192 (1997); *cf. Knox v. Bd. of Sch. Dirs.*, 585 Pa. 171, 182, 888 A.2d 640, 647 (2005) (using "agreement" instead of "contract"). In this case, Toth advances both statutory and contractual theories.

A. Statute: The Police Tenure Act

The relevant statute here is Pennsylvania's Police Tenure Act, 53 Pa. Stat. and Cons. Stat. Ann. §§ 811–816, which provides: "No person employed as a regular full time police officer in any police department of any township of the second class . . . with the exception of policemen appointed for a probationary period of one year or less, shall be suspended, removed, or reduced in rank except for" specific enumerated reasons. § 812. The Pennsylvania Supreme Court has

interpreted the Act as "extend[ing] tenure . . . to all police forces of townships of the second class." *McCandless Township v. Wylie*, 375 Pa. 378, 383, 100 A.2d 590, 592 (1953). "[U]nder the [Act] . . . , a police officer may be suspended or removed only for causes stated." *Tegzes v. Bristol Township*, 504 Pa. 304, 309, 472 A.2d 1386, 1388 (1984). In line with this, the Third Circuit, for its part, has found that the Act is capable of creating a property interest in one's job as a police officer. *See Clark v. Township of Falls*, 890 F.2d 611, 617–19 (3d Cir. 1989).

I conclude that Toth has met her light burden of pleading the existence of a property right under the Act. Toth claims she was a "full time police officer" in Bethel's police department, and Bethel is a township of the second class. Though Bethel appears to appoint and reappoint its police officers on a yearly basis, I do not find (and the Officials do not argue) that this means Bethel's police officers are "probationary" within the meaning of the Act's exemption. Based on Toth's complaint, then, she fits within the Act and thus had a property interest in her job. And because she also alleges, and the Officials do not attempt at this stage to dispute, that she was "removed" from her job without any kind of the process that *Loudermill* requires, I conclude that, as far as the Act goes, Toth has sufficiently pled a procedural due process violation.

B. Contract: Worrilow's Promise

Crucially, however, there is also another basis for Toth's property right, one wholly separate from the Act: Worrilow's promise that she would be able to return to work once she was done with maternity leave. "Understandings" of just this sort have been capable of creating property rights as far back as the Supreme Court's twin 1972 decisions in *Roth* and *Sindermann*.

*Roth* involved an untenured professor at a state university on a one-year contract who, after he was not rehired once his term ended, brought suit claiming a violation of his procedural due process rights. 408 U.S. at 566. Though the Court ultimately concluded that Roth himself

had no property interest in continued employment past the one-year mark—reasoning he had no "more than a unilateral expectation of it," *id.* at 577—it explained how such an interest could be created in general. The Court initially noted that the year before it had held that a public school teacher who lacked tenure or a formal contract nonetheless had a property right to her job based on a "clearly implied promise of continued employment." *Id.* (citing *Connell v. Higginbotham*, 403 U.S. 207, 208 (1971) (per curiam)). *Connell*'s holding, the Court explained, followed from the very "purpose" of property rights: "to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Id.* As a result, the Court in *Roth* concluded, one source of property rights are "existing rules or understandings that stem from an independent source such as state law." *Id.*

*Sindermann*, decided the same day, illustrated just the sort of protected "understanding[]" that *Roth* had in mind. Sindermann, a state college professor who had been employed for four years under a series of one-year contracts, brought a procedural due process suit after his last contract was not renewed. 408 U.S. at 594. After the district court granted summary judgment against him on the ground that he had no recognized property interest, the Supreme Court reversed and remanded. Sindermann's interest, the Court held, "though not secured by a formal contractual tenure provision, was secured by a no less binding understanding fostered by the college administration." *Id.* at 599–600. That understanding came from an "unusual provision" in the faculty handbook—one Sindermann claimed he had "legitimately relied upon"—which provided that even though the college had no tenure system, the college "wishe[d] the faculty member to feel that he has permanent tenure." *Id.* at 600. *Roth*, the Court stressed, had endorsed the concept that a person can obtain a property right "if there are such . . . mutually explicit understandings that support his claim to entitlement and that he may invoke at a hearing." *Id.* at

601.  That entitlement could derive from an implied contract, created by "the promisor's words and conduct in the light of the surrounding circumstances." *Id.* at 601–02 (citation omitted).  In Sindermann's case, since he had "held his position for a number of years" and had alleged, in the form of the handbook, "understandings[] promulgated and fostered by state officials" that could justify a legitimate claim to continuing in his position, the Court concluded that he "must be given the opportunity" to make that showing.  *Id.* at 602–03.

As relevant here, then, *Roth* and *Sindermann* instruct that "[p]rinciples of contract law naturally serve as useful guides in determining whether or not a constitutionally protected property interest exists."  *Jago v. Van Curen*, 454 U.S. 14, 18 (1981).  One such principle, relevant here and well-recognized in Pennsylvania, is promissory estoppel.  *Crouse v. Cyclops Indus.*, 560 Pa. 394, 403, 745 A.2d 606, 610 (2000).  Though basic contract law teaches that a promise unsupported by consideration is not legally enforceable, promissory estoppel provides an exception:  "[A] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement."  *Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc.*, 535 Pa. 469, 467–77, 626 A.2d 156, 160 (1994) (quoting Restatement (Second) of Contracts § 90(1) (Am. Law Inst. 1981)).

Because Toth's case fits comfortably within the promissory-estoppel framework, I find she has established that she had a "mutually explicit understanding[]" with Worrilow sufficient to support her claim to a legitimate entitlement to continued employment as a police officer.  Toth alleges that Worrilow, in the process of instructing her to take early leave, promised her that doing so would not put her job in jeopardy.  She also alleges that she took leave—and much earlier than she otherwise would have—based on his promise.  And finally, she alleges that she

lost her job based on his promise. Toth's allegations describe the very sort of noncontractual agreement that promissory estoppel exists to safeguard.

Moreover, to emphasize, the issue here is not whether Worrilow's promise can be enforced. Rather, it is whether that promise gave Toth a property right to her job that entitled her to the Fourteenth Amendment's procedural protections before she was deprived of it. *Cf. Roth*, 408 U.S. at 603 (stressing this distinction). And on that more limited issue, Toth finds strong support in both *Roth* and *Sindermann*. Toth did not have a mere "unilateral expectation" that she would be able to return to work: rather, she and Worrilow together had a "mutually explicit understanding[]" that she could. That understanding was just like the "clearly implied promise of continued employment" that the Court, even prior to *Roth* and *Sindermann*, had found amounted to a property right. In taking early leave, Toth "rel[ied]" on that understanding "in [her] daily li[fe]." Finally, like in *Sindermann*, Toth "might be able to show from the circumstances of [her] service"—namely, that she had "held [her] position for [multiple] years"—that she had a legitimate entitlement to continued employment. Indeed, in a way, Toth's case is much stronger than Sindermann's: far from being rooted in a provision of an employee handbook describing the employer's general "wishes," her claim to entitlement sounds in an unambiguous promise that her boss made specifically and directly to her.

Accepting her facts as alleged, Toth has sufficiently established that Worrilow's promise created a constitutionally protected property right to her continued employment, in addition to any right she may have had from the Police Tenure Act. And, regardless of where the right

derived from, Toth has also adequately shown that she was deprived of that right without any kind of process, and thus has stated a claim for a violation of her procedural due process rights.[4]

   2.   *Were Toth's Rights Clearly Established?*

Even where a plaintiff has shown the violation of constitutional rights, an individual defendant will still enjoy qualified immunity unless those rights were clearly established at the time of the violation. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted). But a right can be clearly established even without "a case directly on point." *al-Kidd*, 563 U.S. at 741. Since "a reasonably competent public official should know the law governing his conduct," *Harlow*, 457 U.S. at 819, the "dispositive inquiry . . . is whether it would have been clear to a reasonable [official in the defendant's] position that [his] conduct was unlawful in the situation [he] confronted," *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (brackets, internal quotation marks, and citation omitted).

Plainly, the broad right in question here—to notice and an opportunity to be heard prior to the deprivation of a property right—was clearly established by 2014, when the events giving rise to this case began. Over thirty years ago the Supreme Court decided *Loudermill*, firmly establishing that where an individual has a property interest, before she may be deprived of that interest, the Constitution requires that she be given notice and an opportunity to respond. 470

---

[4] Quite significantly, Defendants (Bethel and the Officials together) appear to concede this point without openly saying so. After all, Defendants do not move to dismiss the procedural due process claim against Bethel. Indeed, they freely admit that "[a]s for the Township of Bethel, . . . Plaintiff has pleaded sufficient facts to proceed with a due process claim." Br. 2. Necessarily embedded within that admission is an acknowledgement that Toth has also adequately alleged the violation of her constitutional rights as it pertains to her claims against the Officials. Whether that right was clearly established or whether any particular Official's conduct caused the violation are distinct inquiries, and addressed separately below.

U.S. at 542–46.  Since then, the Court has repeatedly stressed the importance of *Loudermill*'s

protections, *e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 225–26 (2005), as has the Third Circuit, *e.g.*,

*B.S. v. Somerset County*, 704 F.3d 250, 273 (3d Cir. 2013).  Now, to be sure, *Loudermill* and its

long line of supporting authority only help identify the procedural rights at issue here in general

terms, which the Supreme Court has cautioned courts against doing when analyzing qualified

immunity, *see Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam).  The more targeted,

and thus relevant, question here is:  Was it clearly established that either the Police Tenure Act or

Worrilow's promise gave Toth a property right to her job?  I find that the answer is no as to the

Act, but yes as to the promise.

Starting with the Act, working in Toth's favor is that since its 1953 decision in *Wylie*, the

Pennsylvania Supreme Court has consistently interpreted the Act as providing covered police

officers with for-cause protections from removal.  Additionally, since its 1989 decision in *Clark*,

the Third Circuit has found that the Act, where it applies, creates property rights.

Working against Toth, however—and essentially the entire focus of the Officials'

motion—is that Bethel designates its entire police force part-time, and so its officers do not

appear to be covered by the Act, whose protections extend only to "full time" officers.  This

precise issue was recently addressed by Judge Savage in *Jaglowicz*, 189 F. Supp. 3d 262, on

which the Officials heavily rely.  Jaglowicz was another Bethel police officer who, like Toth,

was not reappointed at the January 2015 board of supervisors meeting.  After Jaglowicz brought

a suit effectively identical to this one, Judge Savage granted the individual defendants there (the

five supervisors at the meeting) qualified immunity, reasoning that they could have "genuinely

considered Jaglowicz a part-time officer."  *Id.* at 271.  This was not only because Jaglowicz,

when he was given a one-year appointment in January 2014, was designated a part-time officer,

*see* No. 15-4902 (E.D. Pa. Dec. 18, 2015), Dkt. 22-2, Ex. B at 4—it was also because *all* Bethel

police officers, including its police chief, were, at least up until the annual 2015 meeting,

designated part-time, *see id.*, Ex. C at 3.  Indeed, in 2011, the board openly debated making

certain police positions full-time, but ultimately did not vote on the measure.  178 F. Supp. 3d at

271 (citing No. 15-4902 (E.D. Pa. Jan. 11, 2016), Dkt. 24-7, Ex. F at 4–10).  Now, as Judge

Savage noted, it is true that it does not necessarily follow that a *township's* classification of its

officers as part-time means that those officers fall outside the protections of the *Commonwealth's*

Act.  *Id.* at 269.  But what Bethel's such classification did mean, Judge Savage held, was that its

supervisors could have *reasonably believed* that the Act did not apply to its police officers,

entitling those supervisors to qualified immunity.  *Id.* at 271.  I find that reasoning persuasive[5]

and will apply it here:  because at no time relevant here was it clearly established that Toth was a

full-time officer, the Officials are entitled to qualified immunity insofar as Toth's property right

is based on the Act.

But this case is not fully resolved by *Jaglowicz*, because the Act is not the only basis for

Toth's claim:  while Jaglowicz did not claim that any Bethel official made a specific promise of

---

[5] Toth points out that *Jaglowicz* (which notably featured the same counsel on each side as this case) involved a motion for summary judgment, and so she claims it is inapplicable at the motion-to-dismiss stage here.  Br. 6.  In *Jaglowicz*, however, the "parties conducted virtually no discovery."  178 F. Supp. 3d at 265.  More important, its qualified-immunity holding turned entirely on an examination of indisputably authentic minutes from Bethel board meetings, the last and most relevant of which were those from the January 2015 meeting, where the board did not reappoint Jaglowicz—or Toth.

It is true, as Toth responds, that the timeframe of *Jaglowicz* differed from that here:  for Jaglowicz, the "final decision" ending his employment came at that January 2015 meeting, while for Toth, the alleged failures to reappoint her lasted well beyond that, throughout nearly all of 2015.  But that difference does not matter to the specific question whether any of the Bethel decisionmakers could have genuinely believed that the Act did not apply to any of its police officers at any time relevant to this case.  The January 2015 meeting was the final annual meeting at which police officers were appointed prior to any alleged failures to reappoint Toth.  Because at that meeting the entire police force was, consistent with past practice, designated part-time, the Officials are entitled to qualified immunity on Toth's Act-based claim.

job security, Toth has. And it has long been the case that this sort of reliance-inducing promise is capable of creating protected property rights. *Roth* and *Sindermann* are both forty-five years old and have been reaffirmed time and time again, *see, e.g.*, *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 222 n.7 (1985). Moreover, their specific application to cases like this—those involving informal arrangements in the workplace—has been clear in this jurisdiction for years. Early in their wake, the Third Circuit phrased the relevant inquiry as whether there is a sufficient "expectancy" of continued employment. *Chung v. Park*, 514 F.2d 382, 386 n.6 (3d Cir. 1975). Not long after, in the wrongful-discharge context, the court acknowledged the "evolving" significance of informal practices like "oral representations of job security by the employer." *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 902 (3d Cir. 1983). Finally—and perhaps most salient here—some thirty years ago the Court of Appeals squarely held that a school district's informal, yet well-known, practice of keeping potential teachers on an eligibility list for at least two years while awaiting openings gave rise to a protected interest in remaining on the list. *Stana v. Sch. Dist.*, 775 F.2d 122, 126 (3d Cir. 1985).[6] Against that line of precedent, I conclude that Toth's allegations—that

---

[6] Significantly, the Second Circuit, in finding that a medical resident had a protected interest in becoming the chief resident where that position was commonly awarded to all residents on a rotating basis, placed significance on the fact that the resident's "expectation" of becoming chief was "further enhanced when she was verbally advised" that she would be so appointed. *Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 783 (2d Cir. 1991). I give *Ezekwo* no dispositive weight, but it bears mentioning because of its similarity with the allegations here, particularly since the Third Circuit "routinely consider[s] decisions by other Courts of Appeals as part of [its] 'clearly established' analysis when [it] ha[s] not yet addressed the right" at issue, *Williams v. Bitner*, 455 F.3d 186, 192–93 (3d Cir. 2006).

Worrilow promised her job security, she relied on that promise, and that promise was broken without any sort of hearing—amount to the violation of clearly established rights.[7]

### 3. *Did the Officials' Specific Conduct Violate Toth's Clearly Established Rights?*

The conclusions reached above, however, do not end the inquiry: in addition to finding a violation of clearly established rights, I must also determine whether it was any of the Officials' specific conduct that caused that violation. This is because a government official will only be liable for damages to the extent that his "own individual actions . . . violated the Constitution," *Iqbal*, 556 U.S. at 676, and so an official will enjoy qualified immunity unless his "particular conduct" violated clearly established rights, *al-Kidd*, 563 U.S. at 742. The Third Circuit has placed special emphasis on this step, admonishing district courts for "fail[ing] to analyze the *specific conduct* of each [official] with respect to the constitutional right at issue." *Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996).

Looking at the specific conduct involved here, the field of Officials against whom Toth has viable claims can quickly be narrowed to one: Worrilow. Starting with the supervisors, none of the five who voted not to reappoint Toth at the January 2015 meeting (Davey, Miles, Stoyer, Camero, and Apple) or the two who subsequently joined the board (Koehler and Giribaldi) is alleged to have committed any act that could plausibly be deemed unconstitutional. It is true that Pennsylvania law gives the board of supervisors in second class townships the power to appoint police officers, 53 Pa. Stat. and Cons. Stat. Ann. § 66902, a power that Bethel's board typically seems to exercise at its annual January meeting. It is also the case that here the

---

[7] Even going beyond the law, it is a matter of simple common sense that if Worrilow in fact made the promise Toth has alleged, he would be hard-pressed to argue that Toth was unjustified in thinking that her job was safe.

board never followed through on Worrilow's promise to reappoint Toth.[8]  But no supervisor, individually, has any appointment power:  only the board, collectively, does.  So it is only the board (which remains represented in this case in the form of Bethel itself) against which Toth has a viable procedural due process claim.  Even more pertinent as to the supervisors, however, is that the foundation for Toth's claims against them is the promise made by *Worrilow*:  Toth does not allege that any supervisor made a similar promise, or that any even knew about Worrilow's.  Because nowhere in Toth's complaint can I find any allegation that an individual supervisor took an action that violated her constitutional rights, I will dismiss her claims against all seven supervisors.  And because similar reasoning applies to her claim against Ash—who ultimately replaced Worrilow as police chief and whose only relevant acts were twice telling Toth that he would resubmit her job application—I will also dismiss the claim against him.

But the allegations against Worrilow are different.  In order, according to Toth, he: (1) recommended that she take early leave; (2) promised her that if she did, once she was ready to return to work she would still have a job; (3) failed to follow through on that promise; (4) never gave her notice of the reasons why or an opportunity to respond.  In other words, he did precisely the sort of things that *Roth*, *Sindermann*, and *Loudermill* combine to forbid.

In response, Worrilow seizes upon those last two steps, pointing out that under Pennsylvania law he had no power to make police personnel decisions—only the board did.  His defense, in short, is that even if he made the alleged promise, it was from the very beginning an

---

[8] In this regard, if, as it seems, Toth's claims against the supervisors are rooted in the board's failure to reappoint her at its January 2015 meeting, it is unclear how Koehler and Giribaldi, who did not join the board until afterwards, and so never voted on Toth, did anything wrong at all.

empty one, incapable of being kept.[9]  And that defense may turn out to be a winning one.  But in

the present, pre-discovery posture of this case, it is not one that entitles Worrilow to qualified

immunity.  While the full extent of Worrilow's role in the process that led to Toth losing her job

is admittedly unclear at this early stage, it defies belief to think that his input, as Toth's

supervisor, would be anything less than critical to the board's decision whether to reappoint her.

Indeed, on the facts Toth has alleged, Worrilow's acknowledgement to the board of the promise

he made to her would appear to be virtually a prerequisite to her rehiring.

The basic theory underlying Toth's claim, promissory estoppel, is grounded in the notion

that a promisor should not be "allowed to fail in carrying out what he has encouraged [another]

to expect."  *Fried v. Fisher*, 328 Pa. 497, 502, 196 A. 39, 42 (1938) (citation omitted).  Toth has

sufficiently alleged that Worrilow did just that, which is enough at this juncture to defeat his

claim of qualified immunity.[10]

---

[9] Worrilow also cites *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir.
2010), for the proposition that he cannot be liable on a "supervisory liability theory under the
facts pleaded by the Plaintiff."  Br. 8.  Toth's claim against Worrilow, however, as I construe it,
is not grounded in any theory of supervisory liability:  it is based on Worrilow's own conduct.

[10] I recognize the Supreme Court has emphasized "the importance of resolving immunity
questions at the earliest possible stage in litigation."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)
(per curiam).  The Court has also said, however, that because the point of such early resolution is
not to prevent officials from being subject to *any* discovery, but only "unnecessary and
burdensome" discovery, the key question on a motion to dismiss based on qualified immunity is
"whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly
established law."  *Crawford-El v. Britton*, 523 U.S. 574, 597–98 (1998).  If so, "the plaintiff
ordinarily will be entitled to some discovery."  *Id.* at 598.

Because Toth has alleged that Worrilow violated clearly established law, she is entitled to
some discovery.  This conclusion, moreover, is consistent with the Third Circuit's recognition
that "[a] decision on qualified immunity . . . 'will be premature when there are unresolved
disputes of historical fact relevant to the immunity analysis.'"  *Reilly v. City of Atlantic City*, 532
F.3d 216, 234 (3d Cir. 2008) (omission in original) (citation omitted); *see also Spady v.
Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 n.4 (3d Cir. 2015) (threshold question is whether
right was clearly established; if so, "issues of fact may preclude a definitive finding on the
question of whether the plaintiff's rights have been violated"); *Kovats v. Rutgers, the State Univ.*,

### C. Breach of Contract Claim Against Bethel

Toth also claims that she and Bethel had an oral employment contract, one Bethel breached when she was not given her job back. But Toth and Bethel never had any sort of contract and so this claim will be dismissed. It is well-established that a plaintiff must plead three elements to state a claim for breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) damages. *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004). Additionally, "when an oral contract is pleaded, clarity is important." *Snaith v. Snaith*, 422 A.2d 1379, 1382 (Pa. Super. Ct. 1980).

Toth fails to identify any actual contract, oral or otherwise, underlying her initial term of employment, let alone its terms. Instead, she roots her claim in the for-cause protections of the Police Tenure Act. But even if I assume the disputed point that Toth (who was designated a part-time officer) was covered by the Act (which covers only full-time officers), the statute does not support a claim for breach of contract. *See Upper Makefield Township v. Pa. Labor Relations Bd.*, 562 Pa. 113, 118–19, 753 A.2d 803, 806–07 (2000) (distinguishing between a claim based on a contract and one based on the Act). And though Toth does alternatively point to Worrilow's promise of reappointment, that promise, without more, falls short of what is needed to support a claim against Bethel sounding in contract or promissory estoppel. Worrilow was neither Toth's employer nor acting as the owner of his own enterprise; rather, he was discharging his duties on behalf of a public entity. So absent an allegation that he had authority to contract for Bethel, his representations do not give rise to a contractual theory of relief.

Because Toth has not established any basis for her contract claim, it will be dismissed.

---

822 F.2d 1303, 1313–14 (3d Cir. 1987) (qualified immunity "premature" where the "legal issues [we]re inextricably intertwined with the factual issues" and there had been "no discovery").

**IV.     Conclusion**

Defendants' motion for partial dismissal will be denied as to the procedural due process claim against Worrilow, but granted in all other respects.  An appropriate order follows.


_____ /s/ Gerald Austin McHugh
United States District Judge